IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Action No. 1:19-cv-00621-LTB

PATRICK LEWIS,

       Plaintiff,

v.

ANDREW SAUL, Commissioner of Social Security,

       Defendant.[1]

---

## ORDER

---

Plaintiff appeals from the Social Security Administration ("SSA") Commissioner's final decision denying his application for disability insurance benefits, filed pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq., and his application for supplemental security income, filed pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–1383c. Jurisdiction is proper under 42 U.S.C. § 405(g). Oral argument would not materially assist me in the determination of this appeal. After consideration of the parties' briefs, as well as the administrative record, I REVERSE and REMAND the Commissioner's final order for further proceedings

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Federal Rule of Civil Procedure 25(d). Section 205(g) of the Social Security Act states that an action survives regardless of any change in the person occupying the office of Commissioner of Social Security. 42 U.S.C. § 405(g).

1

## I. STATEMENT OF THE CASE

Plaintiff seeks judicial review of SSA's decision denying his applications for disability insurance benefits and supplemental security income. Compl., ECF No. 1. Plaintiff filed his applications in January 2016 alleging that his disability began on July 25, 2016. [Administrative Record ("AR") 208, 220]

SSA initially denied his applications in June 2017. [AR 122–31] The Administrative Law Judge ("ALJ") conducted an evidentiary hearing on July 26, 2018 and issued a written ruling on October 4, 2018. [AR 12–78] The ALJ ruled that Plaintiff was not disabled. [AR 32] The SSA Appeals Council subsequently denied Plaintiff's administrative request for review of the ALJ's determination, making SSA's denial final for the purpose of judicial review. [AR 1–6, 207]; *see* 20 C.F.R. §§ 404.981, 416.1481. Plaintiff timely filed his Complaint with this court seeking review of SSA's final decision. ECF No. 1.

## II. LEGAL STANDARDS

### A. SSA's Five-Step Process for Determining Disability

A claimant is "disabled" under Title II of the Social Security Act if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). SSA has established a five-step sequential evaluation for determining whether a claimant is disabled and thus entitled to benefits. 20 C.F.R. §§ 404.1520,

416.920.

At step one, SSA asks whether the claimant is presently engaged in "substantial gainful activity." If he is, benefits are denied and the inquiry stops. 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, SSA asks whether the claimant has a "severe impairment"—that is, an impairment or combination of impairments that "significantly limits [his] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If he does not, benefits are denied and the inquiry stops. If he does, SSA moves on to step three, where it determines whether the claimant's impairments "meet or equal" one of the "listed impairments"— impairments so severe that SSA has determined that a claimant who has them is conclusively disabled without regard to the claimant's age, education, or work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d). If not, SSA goes to step four.

At step four, SSA determines the claimant's residual functional capacity ("RFC")—that is, what he is still able to do despite his impairments—and asks whether the claimant can do any of his "past relevant work" given that RFC. 20 C.F.R. §§ 404.1520(e), 416.920(e). If not, SSA goes to the fifth and final step, where it must show that the claimant's RFC allows him to do other work in the national economy in view of his age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant has "the burden of establishing a prima facie case of disability at steps one through four." *Doyal v. Barnhart,* 331 F.3d 758, 760 (10th Cir. 2003).

## B. Standard of Review

My review concerns only whether SSA's factual findings are supported by substantial evidence and whether the correct legal standards were applied. *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015). With regard to the law, reversal may be appropriate when SSA fails to apply proper legal standards. *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). With regard to the evidence, I must "determine whether the findings of fact . . . are based upon substantial evidence, and inferences reasonably drawn therefrom. If they are so supported, they are conclusive upon the reviewing court and may not be disturbed." *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). The record must demonstrate that the ALJ considered all the evidence, but an ALJ is not required to discuss every piece of evidence. *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996). I examine the record as a whole and may not reweigh the evidence or substitute my judgment for that of the ALJ. *Flaherty v. Astrue*, 515 F.3d at 1070.

## III. THE ALJ'S RULING

In her ruling, the ALJ followed the five-step analysis outlined above. The ALJ concluded under the first step that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of July 25, 2016. [AR 17] Under step two, the ALJ determined that Plaintiff had severe impairments of seizure disorder, unspecified cognitive disorder, and mood disorder with bipolar features. [*Id.*] The

4

ALJ concluded under step three that the enumerated severe impairments did not meet or medically equal an impairment in 20 C.F.R., Pt. 404, Subpt. P, App. 1 (the "Listing"). [AR 18]

The ALJ found that Plaintiff had the RFC to perform work at all exertional levels, except that he had the following non-exertional limitations:

> he should never climb ladders, ropes, or scaffolds; he should not work at unprotected heights; he should not work in proximity to heavy moving machinery or engage in commercial driving; he is able to understand, remember, and carry out moderately complex instructions requiring attention to detail, independent work, and work with abstract ideas that can be learned in about six months on a job with on the job training; he can sustain concentration, persistence, and pace for these instructions over a typical work day and work week; work should be in a low stress setting, with low stress defined as only occasional interactions with the general public, coworkers, and supervisors; he can make independent work decisions, tolerate task changes, and can travel and recognize and avoid work hazards.

[AR 21]

The ALJ found that Plaintiff was able to perform his past relevant work of kitchen helper, fulfilling step four. [AR 30–31] Further, the ALJ confirmed in the fifth and final step that jobs existed in significant numbers in the national economy that Plaintiff could perform. [AR 31–32] The ALJ supported her decision based in part by the testimony of the vocational expert and related hypotheticals, and found that Plaintiff could be a small products assembler, cleaner, or hand packager. [AR 32] Thus, the ALJ concluded that Plaintiff was not disabled. [*Id.*]

## IV. ISSUES ON APPEAL

In appealing the ALJ's decision, Plaintiff argues that the ALJ erred by: (1) not evaluating a medical opinion; and (2) assigning improper weight to the state agency doctors.

### A. The ALJ erred by not evaluating a medical opinion.

Plaintiff argues that the ALJ erred when she did not evaluate the opinion of Stephanie Ravine, PsyD. Pl.'s Br., ECF No. 17 at 6. Defendant counters that because the ALJ's decision was consistent with Dr. Ravine's opinion, the ALJ did not need to discuss the opinion. Def.'s Resp., ECF No. 18 at 8. Plaintiff contends that the ALJ's decision was not consistent with Dr. Ravine's opinion. Pl.'s Reply, ECF No. 19 at 2.

In formulating a claimant's RFC, an ALJ must "give consideration to all the medical opinions in the record." *Mays v. Colvin*, 739 F.3d 569, 578 (10th Cir. 2014); 20 C.F.R. §§ 404.1527(c), 416.927(c). But "an ALJ's failure to weigh a medical opinion involves harmless error if there is no inconsistency between the opinion and the ALJ's assessment of [the RFC]." *Id.* at 578–79 (citing *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1162–63 (10th Cir. 2012)). The ALJ is not required to discuss every piece of evidence but must discuss the evidence supporting her decision and "the uncontroverted evidence [she] chooses not to rely upon, as well as significantly probative evidence [she] rejects." *Clifton v. Chater*, 79 F.3d at 1009–10.

In November 2017, Dr. Ravine supervised a neuropsychological evaluation report of Plaintiff. [AR 567–80] Plaintiff points to Dr. Ravine's findings that

6

Plaintiff was, in part: (1) severely impaired in his decision making and social and community judgment; and (2) extremely limited in his ability to make judgments of simple decisions. [AR 577–78] Defendant concedes that the ALJ did not explicitly weigh Dr. Ravine's opinion. ECF No. 18 at 9. But it claims that the error was harmless because Dr. Ravine's opinion that "Plaintiff was mildly limited in understanding, remembering, and carrying out simple instructions and not significantly limited in understanding, remembering, and carrying out complex decision" was "consistent with the ALJ's decision to limit him to 'moderately complex instructions.'" *Id.* Defendant continues that Dr. Ravine's opinion "that Plaintiff was moderately limited in interacting with the general public, coworkers, and peers" was "consistent with the ALJ's decision to find him capable of work involving only occasional interaction with the general public, coworkers, and supervisors." *Id.* Defendant adds that the ALJ's finding that Plaintiff could perform unskilled work can be harmonized with Dr. Ravine's findings. *Id.* at 9–10.

I conclude that the ALJ erred in not explicitly evaluating Dr. Ravine's opinion. Dr. Ravine provided an extensive report. [AR 567–80] It included an overview of Plaintiff's neurocognitive scores. [AR 577] Concerning attention, Plaintiff's auditory attentional capacity was mildly-to-moderately impaired; his ability to use verbal information in his working memory was average; and his sustained concentration and efficiency of information processing was below average. [*Id.*]

Concerning learning and memory, his overall memory was moderately

impaired; his ability to immediately recall information was mildly impaired; his ability to recall delayed information was mildly-to-moderately impaired; and his ability to recognize information at a later time and differentiate it from incorrect information was mildly impaired. [*Id.*] His ability to learn visual information and later differentiate it from false stimuli was average; his ability to immediately recognize visual information at a later time was below average; his ability to recall narrative information was mildly-to moderately impaired. [*Id.*] His ability to recall information of daily living was mildly-to-severely impaired. [*Id.*] Concerning executive functioning, Dr. Ravine found Plaintiff to be mildly impaired, with his decision making and social and community judgment severely impaired; his planning and inhibition abilities above average; his concept formation and mental flexibility average; and his verbal fluency and verbal abstract reasoning average. [*Id.*]

In an additional summary, Dr. Ravine found Plaintiff to have mildly impaired premorbid functioning; his ability to understand and carry out short and simple instructions was mildly limited; his ability to understand and remember complex or detailed instructions was not significantly limited; his ability to make judgments of simple decisions was extremely limited; and his ability to make judgments on complex or detailed decisions was mildly limited. [AR 578] His ability to interact appropriately with the general public was moderately limited; his ability to interact with coworkers or peers without distracting them or them distracting him was moderately limited; and he would be moderately in limited in his ability to

be taught how to do a task or receive constructive criticism. [AR 578–79]

The ALJ discussed some aspects of the evaluation but did not consider it an opinion and did not assign a weight to it. [AR 24] While I understand Defendant's technical argument—that the definition of unskilled work implicates the extreme limitations noted by Dr. Ravine—this does not excuse the lack of analysis of Dr. Ravine's opinion. Plaintiff points to certain limitations that the ALJ would need to address in her RFC assessment to further align with Dr. Ravine's opinion. ECF No. 19 at 2. Without a more thorough analysis of Dr. Ravine's opinion, I cannot analyze whether the ALJ improperly disregarded portions of Dr. Ravine's opinion. *Harrold v. Berryhill*, 714 F. App'x 861, 869 (10th Cir. 2017) (the ALJ erred when he did not fully examine a medical opinion and SSA's harmless error argument regarding consistency did not prevail) (unpublished). "It is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to [her] position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004). There is simply too much said in Dr. Ravine's opinion to conclude that it could be fully harmonized with the ALJ's RFC assessment without further explanation. As such, the ALJ must explicitly evaluate Dr. Ravine's opinion.

### B. The ALJ erred in part in the weight she assigned to the state agency doctors.

Plaintiff argues that the ALJ erred when she gave great weight to the opinions of the state agency doctors, Erin Madden, M.D. and Gayle Frommelt, Ph.D. ECF No. 17 at 7. Generally, Plaintiff argues that the doctors did not have access to the entire case file before opining. *Id.* Plaintiff contrasts this with the opinions of

Thomas Bowser, M.D. and Albert Duncan, M.D., whose opinions he argues should have been granted greater weights than the state agency doctors' opinions. *Id.* at 8. Defendant responds that the state agency doctors' opinions were consistent with the record and that the ALJ did not err. ECF No. 18 at 10.

When an ALJ analyzes evidence from state agency doctors, specific factors to consider include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins v. Barnhart*, 350 F.3d 1297, 1300–01 (10th Cir. 2003); 20 C.F.R. §§ 404.1527(c), 416.927(c); *see* 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1) (evidence from state agency consultants are viewed as other opinion evidence). While the ALJ need not explicitly discuss each individual factor, *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007), the ALJ must "give good reasons in the notice of determination or decision for the weight he ultimately assigns the opinion." *Watkins v. Barnhart*, 350 F.3d at 1301. As long as a reviewing court can follow the ALJ's reasoning and can determine that correct legal standards have been applied, "merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d at 1166.

### 1. Dr. Madden

In her decision, the ALJ stated that

> Dr. Madden opined the claimant had no exertional or postural limitations aside from the preclusion against climbing ladders, ropes, or scaffolds. Dr. Madden further opined the claimant should avoid even moderate exposure to machinery, driving, and heights secondary to his seizure disorder. The undersigned finds Dr. Madden's opinion well supported by and consistent with the evidence, and therefore accorded it great weight.

[AR 27]

Plaintiff argues that the ALJ erred in relying upon Dr. Madden's opinion because Dr. Madden did not have access to the entire file and did not have the depth of understanding nor longitudinal history of Drs. Bowser and Duncan. ECF No. 17 at 7. Not having full access to a case file does not summarily preclude the validity of a doctor's opinion. *Tarpley v. Colvin*, 601 F. App'x 641, 644 (10th Cir. 2015) (the ALJ did not err when it assigned significant weight to the opinion of a state agency physician even though the physician did not view the treating physicians' or subsequent medical records) (unpublished).

Besides a reference to the factors of 20 C.F.R. § 404.1527(c), Plaintiff does not specifically state what about Dr. Madden's opinion is incorrect. ECF No. 17 at 8. To the extent that Plaintiff is arguing that the ALJ should give a greater weight to Drs. Bowser's and Duncan's opinions, I conclude that Plaintiff has not adequately briefed this issue for analysis. *Keyes-Zachary v. Astrue*, 695 F.3d at 1161 (a reviewing court will only consider and discuss contentions that have been adequately briefed for review). And after review of the record, the ALJ provided sufficient reasoning for the weight she gave to the doctors' opinions. [AR 26–27, 92–

11

93, 111–12, 554–57]. Thus, the ALJ did not err in the weight she assigned to Dr. Madden's opinion.

### 2. Dr. Frommelt

Concerning Dr. Frommelt's opinion, the ALJ first summarized its contents. [*Id.*] The ALJ found the opinion consistent with evidence, including a cognitive evaluation by Ryan Cole, PsyD. [AR 28, 544] That same evaluation was integrated into the neuropsychological evaluation conducted by Dr. Ravine. [AR 573] I am remanding this case for the ALJ to assign a weight to Dr. Ravine's opinion. Much of Dr. Frommelt's opinion dealt with similar analyses as Dr. Ravine's evaluation. [AR 27, 88–89, 107–08, 577–80] Thus, the ALJ must reevaluate the weight given to Dr. Frommelt's opinion once she assigns a weight to Dr. Ravine's opinion.

## V. CONCLUSION

Accordingly, SSA's decision is REVERSED, and this case is REMANDED for proceedings consistent with this opinion. The ALJ must: (1) explicitly evaluate Dr. Ravine's opinion; and (2) reevaluate the weight given to Dr. Frommelt's opinion once she assigns a weight to Dr. Ravine's opinion.

Dated: August 29, 2019 in Denver, Colorado.

BY THE COURT:

s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE